UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | |
|---|---|
| MICAH ROMEL BROWN,<br><br>Plaintiff,<br><br>vs.<br><br>MELVA RANK, Corrections Officer at Lower Brule Detention Center, individual and official capacities; and JAMIE MOORE, Corrections Officer at Lower Brule Detention Center, individual and official capacities; and LOWER BRULE DETENTION CENTER,<br><br>Defendants. | 3:25-CV-03017-RAL<br><br><br>OPINION AND ORDER TO DISMISS ON SECTION 1915A SCREENING |

Plaintiff Micah Romel Brown, currently incarcerated at the United States Penitentiary Big Sandy, filed a pro se prisoner civil rights lawsuit under 42 U.S.C. § 1983. Doc. 1. The Court granted Brown's motion for leave to proceed in forma pauperis and ordered him to pay an initial partial filing fee, which he timely paid. Doc. 7.

I.      1915A Screening

A.      Factual Background as Alleged by Brown

Brown filed his complaint while he was incarcerated at the Hughes County Jail in Pierre, South Dakota, but his complaint arises out of events that occurred while he was located at the Lower Brule Detention Center[1] ("LBDC"). Doc. 1 at 1. Brown alleges that he was taken to LBDC

---

[1] The Lower Brule Detention Center is located on the Lower Brule Reservation and operated by the Bureau of Indian Affairs. See BIA OJS Detention Programs, Bureau of Indian Affairs – Division of Resource Integration Services, https://onemap-bia-geospatial.hub.arcgis.com/datasets/bia-ojs-detention-programs/explore?location=44.573030%2C-101.012924%2C8 (last visited Apr. 14, 2026).

after a "fatal car wreck, while [he] was severely injured." Id. at 4 (capitalization in original omitted). Brown also claims that before he arrived at LBDC, the Chamberlain emergency room "didn't check [him] out just took [his] blood & the cops knew that told the jailers when booked." Id. at 5 (capitalization in original omitted).

Brown alleges that he asked Melva Rank, a correctional officer at LBDC, for medical attention, his medication, and for a pen and paper to file a grievance, but that Rank denied each of these requests and told him, "Welcome to Jail." Id. at 2, 4. Brown asserts that he was denied medical attention for several days, and that he "kept asking continuously everytime [he] saw" Rank. Id. at 4 (capitalization in original). Brown states that he was in "obvious distress" and that Rank intentionally ignored him. Id. (capitalization in original omitted). While Brown was located in the medical cell in the booking area, he also asked Jamie Moore, a correctional officer at LBDC, "to see EMT's or medical for [his] injuries," but that Moore ignored him. Id. at 2, 5. Brown later "yelled for medical help" but alleges that Moore told him that he should have stayed at the hospital instead of coming to jail. Id. at 5. Brown claims that he also asked Moore for a pencil and paper in order to file a grievance, but that he did not receive a kite or grievance and was not able to speak with a supervisor. Id.

Brown states that he was in pain and losing his vision because of his injuries, and that after a day he was "moved from medical" to an isolated cell, where he was still denied medical attention. Id. at 4 (capitalization in original omitted). Brown alleges that Rank and Moore were the only correctional officers he saw while he was in the booking cells at LBDC, and that they moved him to an isolated cell even though he was continuously asking for medical attention. Id. at 6. Brown was "clearly in distress" while in the isolated cell, id. at 5, and "begged [and] yelled" for medical

attention while he was in the isolated cell, where he allegedly went five days[2] without medical attention. Id. at 4 (capitalization in original omitted). Brown claims that while in isolation, he had no access to the shower or to a phone, and that he was denied medical treatment and access to the grievance process from the Thursday he arrived at LBDC until the next Monday when he had a court appearance. Id. at 6. Brown alleges that Rank tried to make him miss his court appearance and to "sabotage court[.]" Id.

Because of the defendants' "blatant negligence & refusal of medical & meds[,]" Brown alleges that he suffered a cerebral optical infection causing him to lose an eye. Id. at 4, 5. He asserts that he has not been able to receive surgery to get his eyesight back, and that he is "still half blind & disfigured." Id. at 5.

Brown sues Rank and Moore in both their individual and official capacities. Id. at 2. As relief, Brown seeks monetary damages as reimbursement for his medical expenses and pain and suffering. Id. at 7. Brown states that he "would like [his] eyesight back fully & it to fully be paid for." Id. (capitalization in original omitted). Brown also requests that he be "paid back for the time & child support [he] missed" because his recovery took longer than expected. Id. (capitalization in original omitted). Brown asks that he receive $900,000 "to get the best medical surgeon's [sic]" and to make up for lost time with his family. Id. (capitalization in original omitted).

## B.    Legal Standard

A court must assume as true all facts well pleaded in the complaint when screening under 28 U.S.C. § 1915A. Est. of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights and pro se complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89,

---

[2] Elsewhere Brown states that he was in an isolation cell for four days. Id. at 5.

3

94 (2007) (per curiam); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam). Civil rights complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). If it does not contain these bare essentials, dismissal is appropriate. Beavers v. Lockhart, 755 F.2d 657, 663 (8th Cir. 1985). Twombly requires that a complaint's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" Twombly, 550 U.S. at 555 (citations omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory (citation omitted)). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). This Court will now assess Brown's claims under 28 U.S.C. § 1915A.

C.    **Legal Analysis**

1.    **Claims Against Rank and Moore in their Individual Capacities**

a.    **Bivens Claims Generally**

On the forms Brown used to submit his complaint, he checked the box for bringing claims under 42 U.S.C. § 1983. Doc. 1 at 1. Individuals who believe their constitutional rights have been violated by government officers have two primary avenues for civil relief available under federal law: (1) 42 U.S.C. § 1983, which applies to state and local officers; and (2) the § 1983 analog for suits against federal actors that the Supreme Court recognized in Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). Williams v. City of Carl Junction, 480 F.3d 871, 875 n.2 (8th Cir. 2007) (quoting Hartman v. Moore, 547 U.S. 250, 254 n.2 (2006)). Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured[.]" 42 U.S.C § 1983. Similarly, "Bivens established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." Carlson v. Green, 446 U.S. 14, 18 (1980) (citation omitted).

The LBDC is operated and staffed by the Bureau of Indian Affairs ("BIA").[3] Therefore, both Rank and Moore are BIA employees, and this Court liberally construes Brown's individual capacity claims against them under Bivens. "[T]o state an actionable Bivens claim, a plaintiff must show (1) a violation of a constitutional right, (2) committed by a Federal actor, (3) who acted

---

[3] See OJS Facilities and Detention Programs, Bureau of Indian Affairs, https://biamaps.geoplatform.gov/detention-directory/ (last visited Apr. 14, 2026).

with the requisite culpability and causation to violate the constitutional right." Mendez v. FMC-Rochester, No. 07-CV-2609(JMR/RLE), 2007 WL 2320547, at *3 (D. Minn. Aug. 10, 2007) (quoting Hart v. City of Little Rock, 432 F.3d 801, 804 (8th Cir. 2006)) (citation modified). As a judicially created cause of action, Bivens is more limited than its § 1983 counterpart. There are at least three recognized, albeit limited, substantive causes of action available under Bivens. Ziglar v. Abbasi, 582 U.S. 120, 131 (2017).

In Bivens, the Supreme Court of the United States recognized an implied cause of action under the Fourth Amendment against federal officers for entering and searching the plaintiff's apartment and then arresting him, all without a warrant. Bivens, 403 U.S. at 389. The Supreme Court has only recognized an implied cause of action for money damages under the Constitution in two other contexts: a Fifth Amendment equal protection claim under the Due Process clause against a Congressman for gender discrimination, Davis v. Passman, 442 U.S. 228, 248–49 (1979), and an Eighth Amendment claim against federal prison officials for failure to treat an inmate's serious medical need that resulted in his death, Carlson, 446 U.S. at 24. See Ziglar, 582 U.S. at 131 (recognizing that "[t]hese three cases—Bivens, Davis, and Carlson—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself").

The Supreme Court has been hesitant to extend Bivens actions to cover a wide array of alleged constitutional violations. See Egbert v. Boule, 596 U.S. 482, 486 (2022) ("Over the past 42 years, however, we have declined 11 times to imply a similar cause of action [under Bivens] for other alleged constitutional violations."); Ziglar, 582 U.S. at 135 ("[T]he Court has made clear that expanding the Bivens remedy is now a 'disfavored' judicial activity." (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009))). The United States Court of Appeals for the Eighth Circuit has

adopted a "presumption against judicial recognition of direct actions for violations of the Constitution by federal officials." Farah v. Weyker, 926 F.3d 492, 500 (8th Cir. 2019) (quoting Neb. Beef, Ltd. v. Greening, 398 F.3d 1080, 1084 (8th Cir. 2005)).

In deciding whether to extend a Bivens remedy, courts engage in a two-step inquiry. See Egbert, 596 U.S. at 492. First, a court considers whether the claim at issue is "'meaningful[ly]' different from the three cases in which the Court has implied a damages action." Id. (alteration in original) (quoting Ziglar, 582 U.S. at 139). If the claim has not been previously recognized as a Bivens claim, the court proceeds to step two. At step two, a court asks "if there are 'special factors [that] counsel[] hesitation'" before implying a new cause of action "in the absence of affirmative action by Congress." Ziglar, 582 U.S at 136 (quoting Carlson, 446 U.S. at 18). Related to this second step is the question of whether an alternative remedy exists. Id. at 137; see also Wilkie v. Robbins, 551 U.S. 537, 550 (2007). If a court has "reason to pause before applying Bivens in a new context or to a new class of defendants—[it should] reject the request." Hernandez v. Mesa, 589 U.S. 93, 102 (2020).

### b.    Deliberate Indifference to Serious Medical Needs Claim

In his complaint, Brown states: "8th Amendment Violation Inadequate Medical Services. 14th Amendment With No Formal Adjudication of Guilt." Doc. 1 at 4. Brown is correct that "the Eighth Amendment has no application" until there has been a "formal adjudication of guilt[.]" Walton v. Dawson, 752 F.3d 1109, 1117 (8th Cir. 2014) (quoting City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983)). "A convicted prisoner's conditions of confinement are subject to scrutiny under the Eighth Amendment's prohibition against cruel and unusual punishment, while a pretrial detainee's challenge to such conditions is analyzed under the due process clause of the Fifth Amendment (with respect to federal actors) or the Fourteenth Amendment (with

respect to state actors)." Walton v. Vidakovic, No. 8:20CV123, 2021 WL 929216, at *4 (D. Neb. Mar. 10, 2021). Because Brown is asserting claims against federal actors, his deliberate indifference claims arise under the Fifth Amendment due process clause. Id. This Court now turns to the two-step inquiry outlined by the Supreme Court to decide whether to extend a Bivens remedy to the context alleged by Brown. See Egbert, 596 U.S. at 492.

Step one of the Bivens analysis considers whether Brown presents a Bivens claim in a new context. Id. While "[t]he Supreme Court has not explicitly recognized a Bivens remedy for deliberate indifference to serious medical needs under the Fifth Amendment[,]" Carattini v. Behun, No. 21-CV-9373 (NSR), 2024 WL 3274663, at *6 (S.D.N.Y. July 2, 2024), the term "new context" is broad, and the Supreme Court considers "a context as 'new' if it is 'different in a meaningful way from previous Bivens cases decided by [the] Court.'" Hernandez, 589 U.S. at 102 (quoting Ziglar, 582 U.S. at 139). A case may be meaningfully different

> because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider.

Ziglar, 582 U.S. at 139–40.

The Supreme Court cases most similar to Brown's claims are Carlson v. Green and Ziglar v. Abbasi. Carlson involved Eighth Amendment deliberate indifference claims against prison officials for failure to treat an inmate's asthma, which ultimately resulted in the prisoner's death. Carlson, 446 U.S. at 17–18. Both Brown's complaint and Carlson involved federal jail officials' alleged deliberate indifference to serious medical needs. But Brown's claims must be considered under the Fifth Amendment, unlike the Eighth Amendment claims presented in Carlson, because

8

he alleges that there was "no formal adjudication of guilt" at the time that the events giving rise to this complaint occurred. Doc. 1 at 4–6; see also Walton v. Dawson, 752 F.3d at 1116–17.

In Ziglar, the Supreme Court noted that claims brought by pretrial detainees under the Fifth Amendment alleging that a warden allowed guards to abuse detainees had "significant parallels" to Carlson. Ziglar, 582 U.S. at 146–48. But the Court nonetheless found that applying Bivens to the Fifth Amendment claims would be "extend[ing] Carlson to a new context[,]" placing emphasis on the fact that "Carlson was predicated on the Eighth Amendment and this claim is predicated on the Fifth." Id. at 147–48. According to the Court, "even a modest extension is still an extension[,]" and "a case can present a new context for Bivens purposes if it implicates a different constitutional right[.]" Id.

In Johnson v. Terry, the United States Court of Appeals for the Ninth Circuit confronted similar facts to the ones here, where a pretrial detainee alleged a deliberate indifference to serious medical needs claim against federal officials under the Fifth Amendment. Johnson v. Terry, 119 F.4th 840, 844–46 (11th Cir. 2024). Even though there were "significant parallels" to the claim in Carlson, the Ninth Circuit held that the plaintiff's claim presented a new context for the purposes of Bivens because it was "predicated on a different constitutional right than the one in Carlson[,]" and "[t]hat alone is enough for the claim to present a new context." Id. at 857–58 (quoting Ziglar, 582 U.S. at 148).

The fact that Brown was a pretrial detainee is significant not only for whether his Eighth or Fifth Amendment rights are implicated, but also for considering how his case is meaningfully different from Carlson. In another case regarding a failure to protect claim brought by a pretrial detainee under the Fifth Amendment, the Ninth Circuit discussed the "significant" difference

between the setting where convicted criminals and pretrial detainees are housed.[4]  Marquez v. Rodriguez, 81 F.4th 1027, 1032 (9th Cir. 2023).  Because the claim arose under a different constitutional amendment and a "different factual setting[,]" the Ninth Circuit in Marquez found that the differences were "more than enough to establish that [Plaintiff's] claim involves a new Bivens context."  Id.  See also Dynlacht v. Laughingwell, No. 25-CV-5277, 2025 WL 3026263, at *6 (E.D. Pa. Oct. 29, 2025) ("Consistent with these cases and the approach taken by most courts that have recently considered the issue, the differences between the relevant constitutional provisions and realities of confinement pertaining to pretrial detainees and those pertaining to convicted and sentenced prisoners present a new Bivens context." (collecting cases)).

Because Brown's Fifth Amendment deliberate indifference claim is "meaningfully different" than those Bivens claims previously recognized by the Supreme Court, this Court must proceed to step two and consider whether there exist special factors that counsel hesitation.  Ziglar, 582 U.S at 136.  Related to this second step is the question of whether an alternative remedy exists.  Id. at 137; see also Wilkie, 551 U.S. at 550.  If a court has "reason to pause before applying Bivens in a new context or to a new class of defendants—[it should] reject the request."  Hernandez, 589 U.S. at 102.

Here, there are special factors that counsel against extending Bivens to Brown's Fifth Amendment deliberate indifference claim.  First, "[p]risoner civil rights litigation . . . is heavily regulated by Congress, counseling hesitation in the expansion of remedies available to prisoners."  Brown v. Cooper, No. 18-219 (DSD/BRT), 2018 WL 6977594, at *12 (D. Minn. Dec. 11, 2018),

---

[4] According to the Ninth Circuit, "[j]ails are typically smaller than prisons, they are not intended for long-term detention, and they house a different class of inmates.  Prisons and jails also may involve different levels of risk to inmate safety.  Because of these differences, jails and prisons are operated differently."  Marquez, 81 F. 4th at 1032.

report and recommendation adopted by 2019 WL 121943 (D. Minn. Jan. 7, 2019), aff'd in relevant part as modified, 787 F. App'x 366 (8th Cir. 2019) (per curiam). "Congress legislated prisoner litigation through the Prisoner Litigation Reform Act [PLRA][5] and did not provide a damages claim against federal prison officials. . . . Congress likely would have included such a remedy if it had intended to provide one." Yarclay v. Averitt, No. CIV-22-445-G, 2022 WL 20701862, at *4 (W.D. Okla. July 8, 2022) (collecting cases), report and recommendation adopted by 2023 WL 6302180 (W.D. Okla. Sept. 27, 2023); see also Mays v. Smith, 70 F.4th 198, 206 (4th Cir. 2023) (recognizing that the PLRA "does not provide for a standalone damages remedy against federal jailers[.]" (quoting Ziglar, 582 U.S. at 149)).

Second, other remedies exist to address the claims alleged by Brown. The BIA provides a mechanism of reporting officer misconduct:

> The Director will develop and maintain a reporting system that allows any resident of or visitor to Indian country to report officer misconduct. Each law enforcement program in Indian country will maintain instructions on how to register a complaint. An overview of these steps must be posted for public viewing at each law enforcement facility in Indian country.

25 C.F.R. § 12.52. A system is also in place to investigate officer misconduct:

> The Director, Office of Law Enforcement Services maintains an internal affairs program that investigates all allegations of misconduct by BIA officers, and any officer receiving funding and/or authority from the BIA. All allegations of misconduct must be thoroughly investigated and appropriate action taken when warranted. Any person having knowledge of officer misconduct must report that information to the officer's supervisor. The supervisor must immediately report allegations to the internal affairs unit. Depending upon the severity of the allegation, the matter may be dealt with locally or it will be investigated by the internal affairs unit. Failure of any BIA employee to report known allegations may be considered misconduct in itself. Citizens may report officer misconduct directly to the internal affairs unit if that is more practical.

---

[5] The PLRA, "designed to deter the filing of frivolous litigation against prison officials, applies to both pretrial detainees and convicted prisoners." Kingsley v. Hendrickson, 576 U.S. 389, 402 (2015).

11

Id. § 12.53. Lastly,

> All allegations of civil rights violations must be reported immediately to the internal
> affairs unit. That office will ensure that allegations are immediately reported to the
> Civil Rights Division of the U.S. Department of Justice through established
> procedures. BIA's internal affairs unit may also investigate the matter and make
> recommendations for additional action as necessary.

Id. § 12.54. The BIA's administrative complaint remedy, "standing alone, precludes a Bivens

action." Longtail v. LaRocque, No. 3:22-CV-111, 2024 WL 6859992, at *13 (D.N.D. Feb. 23,

2024), report and recommendation adopted by 2024 WL 6860004 (D.N.D. Apr. 15, 2024).

Brown alleges that he was not able to file grievances while he was at LBDC because he

was not given the materials to do so. See Doc. 1 at 2, 4, 5. "But whether the plaintiff himself was

denied access to an alternative remedy is not the question. The question is 'whether the

Government has put in place safeguards to prevent constitutional violations from recurring.'"

Johnson, 119 F.4th at 860 (quoting Egbert, 596 U.S. at 498). As the Supreme Court reasoned,

> [T]he question whether a given remedy is adequate is a legislative determination
> that must be left to Congress, not the federal courts. So long as Congress or the
> Executive has created a remedial process that it finds sufficient to secure an
> adequate level of deterrence, the courts cannot second-guess that calibration by
> superimposing a Bivens remedy.

Egbert, 596 U.S. at 498. Brown also may have a remedy under the Federal Tort Claims Act for

money damages from the United States for certain torts committed by federal officers acting within

the scope of their duties, albeit that claim would not be against Rank and Moore in their individual

capacities. Because Brown's claims would require the Court to extend Bivens and because special

factors are present here that counsel hesitation, the Court dismisses Brown's Fifth Amendment

deliberate indifference to medical needs claim against Rank and Moore in their individual

capacities under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### c.    Retaliation Claim

Brown alleges an Eighth Amendment retaliation claim against Rank and Moore based on his allegations that he was transferred to an isolation cell because of his attempts to receive medical attention and file grievances, and that Rank tried to "sabotage" his court appearance. Doc. 1 at 6. "A prisoner's Eighth Amendment rights are violated if prison officials impose a disciplinary sanction against a prisoner in retaliation for the prisoner's exercise of his constitutional right." Meuir v. Greene Cnty. Jail Emps., 487 F.3d 1115, 1119 (8th Cir. 2007) (citation modified).

Here, it is not clear from Brown's complaint that he faced disciplinary action. See Doc. 1 at 6; see also Williams v. Horner, 403 F. App'x 138, 140 (8th Cir. 2010) (per curiam) (stating "we have consistently found the filing of a disciplinary action against an inmate, if done in retaliation for the inmate's use of the grievance procedure against prison staff, is allegation sufficient to survive dismissal at the pleading stage."); Goff v. Burton, 7 F.3d 734, 736–38 (8th Cir. 1993) (discussing retaliatory transfers after plaintiff was placed in investigative segregation and disciplinary reports were issued against him). This Court liberally construes Brown's retaliation claims as First Amendment retaliation claims.

To allege a First Amendment retaliation claim, a plaintiff must "show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." Spencer v. Jackson Cnty., 738 F.3d 907, 911 (8th Cir. 2013) (quoting Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004)). "The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity." Lewis v. Jacks, 486 F.3d 1025, 1029 (8th Cir. 2007) (citing Dixon v. Brown, 38 F.3d 379, 379 (8th Cir. 1994)).

13

As with Brown's Fifth Amendment deliberate indifference claims, this Court must determine whether Brown's First Amendment retaliation claim may proceed under Bivens. In Egbert, the Supreme Court issued direct guidance on this point: "we hold that there is no Bivens action for First Amendment retaliation." Egbert, 596 U.S. at 499. Therefore, the Court dismisses Brown's First Amendment retaliation claim against Rank and Moore in their individual capacities for monetary damages under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

**2.      Claims Against Rank and Moore in their Official Capacities**

Brown also sues Rank and Moore in their official capacities. "[A] claimant cannot bring a suit against a federal officer in his official capacity seeking money damages for a constitutional violation." D'Addabbo v. United States, 316 F. App'x 722, 726 (10th Cir. 2008). See also McBride v. Coleman, 955 F.2d 571, 576 (8th Cir. 1992) ("Absent an express waiver of sovereign immunity, money awards cannot be imposed against the United States." (citation omitted)); Browning v. Pennerton, No. 7:08-CV-88-KKC, 2008 WL 4791491, at *2 (E.D. Ky. Oct. 24, 2008) ("The law is settled that damages cannot be sought against federal employees in their official capacities."); Berger v. Pierce, 933 F.2d 393, 397 (6th Cir. 1991) (providing that "a Bivens claim may not be asserted against a federal officer in his official capacity"). Thus, Brown's Fifth Amendment deliberate indifference and First Amendment retaliation claims against Rank and Moore in their official capacities are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

While damages cannot be sought against federal employees in their official capacities, the Federal Tort Claims Act ("FTCA"), as mentioned earlier, permits recovery of money damages from the United States for certain torts caused by government employees acting within the scope of their duties. 28 U.S.C. § 1346(b)(1). But even if this Court were to liberally construe Brown's

14

claims against Rank and Moore in their official capacities for monetary damages as claims against the United States arising under the FTCA, those claims would have to be dismissed at this point. The "FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." McNeil v. United States, 508 U.S. 106, 113 (1993). Exhaustion involves a "presentment requirement," which requires that the plaintiff "shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). "Conformity with the presentment requirement is necessary for federal courts to have subject matter jurisdiction over a subsequent action." A.M.L. ex rel. Losie v. United States, 61 F.4th 561, 564 (8th Cir. 2023) (citing Mader v. United States, 654 F.3d 794, 805 (8th Cir. 2011) (en banc)).

The presentment requirement serves to "provide[] federal agencies a fair opportunity to meaningfully consider, ascertain, adjust, determine, compromise, deny, or settle FTCA claims prior to suit." Mader, 654 F.3d at 800–01. Brown has not alleged that he exhausted his remedies under the FTCA before filing suit[6] nor alleged facts that he provided the BIA with any sort of notice that would give it a fair opportunity to meaningfully consider his claims. See generally Doc. 1. Therefore, this Court would lack subject-matter jurisdiction to hear his claims under the FTCA.

### 3.    Claims Against LBDC

It is not entirely clear what claims Brown intended to assert against LBDC, or if he intended to name LBDC as a defendant at all. On the first page of his complaint, Brown lists LBDC beneath

---

[6] Brown does allege that he attempted to file grievances while he was located at LBDC but was denied the materials to do so. See Doc. 1 at 4–6. But Brown's complaint makes no mention of the FTCA, and the grievances Brown attempted to make appear to be related to his requests for medical attention, not for the purpose of filing an administrative complaint in order to satisfy the presentment requirement. See id.

Rank and Moore's names, but does not name LBDC on the list of defendants on the next page. See Doc. 1 at 1, 2. Indeed, LBDC is not mentioned outside its connection with Rank and Moore. See generally id. In the event that Brown did intend to assert a claim against LBDC, Bivens is not an appropriate vehicle for bringing claims against LBDC because "[t]he purpose of Bivens is to deter *individual federal officers* from committing constitutional violations." Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 70 (2001) (emphasis added). See also F.D.I.C. v. Meyer, 510 U.S. 471, 485 (1994) ("If we were to imply a damages action directly against federal agencies . . . there would be no reason for aggrieved parties to bring damages actions against individual officers[]" and "the deterrent effects of the Bivens remedy would be lost."). A claim against LBDC under § 1983 is also not cognizable because LBDC is operated by the BIA, and § 1983 applies to state and local officers. See Williams, 480 F.3d at 875 n.2.

Brown does not identify any other possible cause of action for bringing claims against LBDC. Therefore, any claims Brown intended to assert against LBDC are dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915(b)(1).

## II.    Conclusion

Accordingly, it is

ORDERED that Brown's Bivens claim alleging deliberate indifference to serious medical needs under the Fifth Amendment against Rank and Moore in their individual capacities for money damages is dismissed for failure to state a claim upon which relief can be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Brown's Bivens claim alleging First Amendment retaliation against Rank and Moore in their individual capacities for money damages is dismissed for failure to state a

16

claim upon which relief can be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Brown's Fifth Amendment deliberate indifference and First Amendment retaliation claims against Rank and Moore in their official capacities for money damages are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2). It is finally

ORDERED that any claims Brown intended to assert against LBDC are dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915(b)(1).

DATED April 21st, 2026.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE

17